IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES A. FULLARD,
    Plaintiff,

v.                                                     CIVIL ACTION NO. DKC-09-2822

DR. PETTERSON, et al.,
    Defendants.

## MEMORANDUM OPINION

On October 20, 2009, the court received Plaintiff James A. Fullard's civil rights complaint. Paper No. 1. Fullard, an inmate incarcerated at the Jessup Correctional Institution, alleged that he was denied adequate psychiatric and medical care and that correctional employees harassed him. *Id*. Defendants Dr. Peters, Darvin Geyer and Warden Wolfe[1] have filed a Motion to Dismiss, or in the Alternative for Summary Judgment. Paper No. 10. Plaintiff has filed an opposition. Paper No. 12. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, the dispositive motion filed by Defendants, treated as a motion for summary judgment, will be granted.

**Background**

Fullard alleges that on August 24, 25, 26, and 27, 2009, he submitted sick call requests asking to speak with a psychologist about the mental and physical anguish he was suffering as a result of physical and mental assaults by staff. His requests were ignored. Plaintiff states that he notified psychology and other officials on August 27, 2009, that he would hurt himself before he let the officers "do it. They laughed at [him]," and told him to cut his throat. Plaintiff states that he sliced his arm with a razor and did not receive treatment for the cut until the following day when he received stitches. Paper No. 1.

---

[1] The Clerk shall amend the docket to reflect the correct spelling of Defendants' names.

The documentary evidence presented to the court demonstrates that on Sunday, August 23, 2009, Plaintiff submitted a sick call slip asking to speak to psychology staff because he felt stressed and harassed. Paper No. 10, Ex. A. Plaintiff submitted two more sick call slips seeking psychological care on August 25, 2009 and August 27, 2009. None of the sick call slips threatened self harm. Defendant Darvin Geyer, Psychology Associate, was not working on Sunday, August 23, 2009.[2] On Monday, August 24, 2009 through Wednesday, August 26, 2009, Geyer was away from JCI for training. When Geyer returned to JCI on August 27, 2009 he received the three sick call slips filed by Plaintiff during Geyer's absence. Paper No. 10, Ex. B.

Geyer met with Plaintiff at 9:53 a.m. on August 27, 2009. Plaintiff advised Geyer that an officer on the evening shift had been "harassing him." *Id*., Ex. A, p. 5. Geyer observed that Plaintiff had a "superficial cut on the inside of his left elbow." Plaintiff stated that he had cut himself the night before due to stress. Geyer advised Plaintiff that he would speak with the evening shift manager regarding Plaintiff's concerns. Geyer assessed Plaintiff's mental status as being within normal limits with no evidence of psychosis. Plaintiff appeared well rested with good hygiene. Geyer further observed that Plaintiff was "fairly manipulative during this encounter, which is usual for him." Plaintiff did not threaten to harm himself again, although he did not say definitely whether he would continue self-mutilating. Geyer noted he was not ordering any precautionary measures at that time but would check on Plaintiff the following morning. *Id*., p. 6-8.

Less than one hour later Geyer was contacted by the medical department where Plaintiff was waiting to be seen for the cut on his arm. A correctional officer advised Geyer that Plaintiff

---

[2] Any sick call slips filed over the weekend are typically reviewed by him upon return to work on Monday.

swallowed a razor blade. Plaintiff denied doing so.[3] *Id.*, p. 9. Geyer instructed correctional staff to place Plaintiff in a stripped cell with only a jump suit after he finished his visit with medical staff to prevent Plaintiff from harming himself. *Id.*, p. 9-10, Ex. B.

Plaintiff was evaluated by medical staff for the cut on his arm at 11:13 a.m. The nurse observed "three little razor cuts … to left wrists and upper wrist." Paper No. 10, Ex. A, p. 11. The wounds were cleaned and dressed and Plaintiff was placed in the stripped cell as directed by psychiatric staff.

The following morning, August 28, 2010, Geyer met with Plaintiff at 10:04 a.m. Overnight Plaintiff had threatened to hurt himself. During his meeting with Geyer, Plaintiff was uncooperative. He showed Geyer the cut from the day before and complained that the medical department "didn't do anything" for the cut. Geyer directed that Plaintiff continue to be housed in the strip cell, jump suit only. Plaintiff did not complain of any new cuts and Geyer did not observe any new cuts. A follow-up appointment was set for Monday, August 31, 2009. *Id.*, p. 12-13.

That same day, at 3:24 p.m., Plaintiff came to the medical department with a 5 inch long, 2 inch deep cut on his left elbow. Plaintiff advised the medical department that he had cut himself since the preceding evening. The wound was sutured and a tetanus shot given. *Id.*, p. 15. Plaintiff met with Geyer again on Monday, August 31, 2009 at 10:26 a.m. Plaintiff advised that he had not cut himself since Friday, August 28 and did not feel the urge do so. Geyer advised correctional staff that Plaintiff could be given a mattress. *Id.* p. 17. Geyer avers that at no time during his meetings with Plaintiff did he laugh at Plaintiff or tell him to "cut [his] throat." *Id.*, Ex. B.

---

[3] There is no medical evidence that Plaintiff swallowed a razor blade.

3

Defendants Peters[4] and Wolfe aver that they did not meet with Plaintiff between August 23 and August 28, 2009, and that they did not laugh at Plaintiff or tell him to "cut [his] throat." *Id*, Ex. C and D. Moreover, Warden Wolfe avers that he has no personal involvement in responding to sick call slips from inmates.

## Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to .... the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia*

---

[4] Other than naming Dr. Peters in the caption of his complaint, Plaintiff has alleged no facts concerning Dr. Peters. Accordingly, the complaint against Dr. Peters is subject to dismissal.

*Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

**A.     Respondeat Superior**

Plaintiff's allegations against Warden Wolfe are based solely upon the doctrine of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in civil rights claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983). Accordingly, Plaintiff's claims against the Warden are subject to dismissal.

**B.     Eighth Amendment**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff

5

was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Clearly, a mental health crisis constitutes an objectively serious medical condition. Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Symptoms suggesting that an individual is at serious risk of self-mutilation constitutes a serious medical need, *De'Lonta,* 330 F. 3d at 634, *citing Lee v. Downs*, 641 F. 2d 1117, 1121 (4th

6

Cir. 1981). The record evidence demonstrates that Plaintiff submitted three sick call slips seeking to speak with psychiatric staff. In none of the three sick call slips did Plaintiff indicate a desire for self-harm. Plaintiff was seen as soon as the psychology associate returned to the prison from the weekend and his training class, four days after Plaintiff first submitted a sick call slip seeking psychiatric attention. At that time it was observed that Plaintiff had cut himself the night before. Geyer did not believe Plaintiff required any precautionary measures at that time, finding Plaintiff to be manipulative and that his mental health was within normal limits. Based on those assessments, Geyer directed Plaintiff be returned to his cell. That same day, Plaintiff threatened self-harm by falsely claiming that he had swallowed a razor blade. In response to that threat Geyer directed Plaintiff placed in a stripped cell with only a jump suit. Somehow, the following day, Plaintiff cut himself again, this time deeply, requiring stitches and a tetanus shot. Geyer met with Plaintiff after the second cutting and Plaintiff indicated he did not have a desire to harm himself any more. Plaintiff remained in the stripped cell but was granted a mattress. Geyer met with Plaintiff three times within a twenty-five hour period from August 27-28. He monitored Plaintiff's risk for self-mutilation at each visit and took precautionary measures when be believed Plaintiff was a risk of self-harm. In light of the foregoing, the court finds that Plaintiff simply disagrees with the judgment of his psychiatric health care providers. Such disagreement with a course of treatment does not provide the framework for a federal civil rights complaint but rather, at most, states a claim of negligence. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975).

Likewise, the medical care received by Plaintiff for the cuts he inflicted was constitutionally adequate. Plaintiff was seen by medical staff the day he first cut himself. The cuts were small and they were cleaned and treated with antibiotic ointment. Plaintiff was returned to his cell. The second cut was likewise treated on the same day Plaintiff inflicted it upon himself. The cut was sutured and

Plaintiff was given a tetanus shot. As such, even if Plaintiff had properly named and served Defendant "CMS Nurse Name Unknown" his claim against that person would fail.

## Conclusion

Defendants' Motion for Summary Judgment is granted. Judgment shall be entered in favor of Defendants and against Plaintiff. A separate order follows.


Date: June 24, 2010  _____/s/_____
DEBORAH K. CHASANOW
United States District Judge